NAGEL RICE, LLP
Bruce H. Nagel, Esq.
bnagel@nagelrice.com
Greg M. Kohn, Esq.
gkohn@nagelrice.com
103 Eisenhower Parkway
Roseland, NJ  07068
973-618-0400
Attorneys for *Plaintiffs and Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GLICKMAN, and ANDREW KIMMEL, on behalf of themselves and the Putative class, | : : : : : |
| | : Civil Action No.: 15:cv:08041 |
| Plaintiffs, | : |
| | : |
| vs. | : |
| | : |
| LIVE NATION ENTERTAINMENT, INC., LIVE NATION WORLDWIDE, INC., LIVE NATION CONCERTS, LIVE NATION TICKETING LLC, LIVE NATION GLOBAL TOURING, ABC CORP. 1-20, | : : : : : : |
| | : |
| Defendants. | : |

## SECOND AMENDED COMPLAINT AND JURY DEMAND
### (CLASS ACTION)

Plaintiff, Steven Glickman, residing in Livingston, New Jersey, and Plaintiff, Andrew Kimmel, residing in Edgewater, New Jersey, by and through their undersigned attorneys, by way of Second Amended Complaint, brings this suit against Defendants Live Nation Entertainment, Inc. ("LNE"), Live Nation Worldwide, Inc. ("LNW"), Live Nation Concerts ("LNC"), Live Nation Ticketing, LLC ("LNT"), Live Nation Global Touring ("LNGT"), and ABC Corp. 1-20

(LNE, LNW, LNC, LNT, LNGT, and ABC Corp 1-20 collectively the "Defendants") to recover damages owed to them and others similarly situated.

## I. <u>NATURE OF THE ACTION</u>

1. Defendants promoted, sold tickets to, and were responsible for ticket allocation and distribution for many concerts held in New Jersey for the six year period prior to the filing of the complaint in this matter (collectively the "Concerts").

2. Defendants promoted, sold tickets to, and were responsible for ticket allocation and distribution for Phish's 2013 Fall Tour held at Boardwalk Hall and Maroon 5's "Overexposed" tour held at the IZOD Center.

3. It is a violation of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1 *et*. *seq*. (the "Statute") for Defendants to withhold more than 5% of tickets destined to be available for sale to the general public.

4. The Legislature imposed restrictions on the withholding of tickets that are destined to be available for sale to the general public.

5. Defendants withheld more than 5% of tickets that were destined to be available for sale to the general public.

6. There exists within the entertainment and sports industries a customary practice of withholding a percentage of tickets from public sale either through contractual obligations or

by way of habit and custom. Commonly known as "holds" or "hold-backs", these tickets are held for persons and groups such as event promoters, sponsors, performers, entertainment critics, celebrities, local dignitaries, and other connected insiders.

7.  Defendants held back tickets for all of the Concerts at issue.

8.  Some of these holds are then sold to ticket brokers, ticketing companies, venues, or artists for resale on the secondary market.  This allows those entities to obtain large blocks of prime tickets for the Concerts prior to those tickets being offered to the public.  These brokers, venues, artists, and ticketing companies, or others pay Defendants a premium in order to have access to the best seats to the Concerts before the general public.

9.  Those prime seats are then sold through primary/secondary channels such as Ticketsnow, TM+, or other marketplaces for the highest market value. Defendants are providing/selling the best tickets to venues, artists, and ticketing companies who are then selling those tickets to the general public for more than face value.

10.  The effect of Defendants' withholding of tickets from sale to the public limits the available seats that the general public can purchase at face value, which increases demand for tickets on the secondary market causing prices to increase.

11.  Defendants' actions and their withholding of more than 5% of tickets for the Concerts destined to be available for sale

to the general public, forced fans into a secondary market for tickets to the Concerts where they paid substantially more than the ticket's face value.

12.  In addition, Defendants have a custom and practice of withholding tickets destined to be available for sale to the general public to the Concerts. Defendants withheld tickets to every identifiable Live Nation concert held at Boardwalk Hall since 2008.

13.  In accordance with Defendants' long standing custom and practice, Defendants also withheld tickets to Live Nation concerts held at the IZOD Center, Prudential Center, Metlife Stadium, Giants Stadium, and other New Jersey venues.

14.  Defendants withheld more than 5% of tickets destined to be available for sale to the general public to the following **24** concerts at Boardwalk Hall: Jimmy Buffet 2008, Jimmy Buffet 2009, Jimmy Buffet 2012, Aerosmith 2014, Aerosmith 2010, Beyonce 2013, Britney Spears 2011, Elton John 2008, Jason Aldean 2014, Jay-Z & Kanye West 2011, Kanye West 2014, Kiss & Def Leppard 2014, Lady Gaga 2011, Lady Gaga 2010, Lady Gaga 2014, Luke Bryan 2013, Madonna 2008, Madonna 2012, Mary J Blige & Jay-Z 2008, Miranda Lambert & Dierks Bentley 2013, Nickelback 2010, Phish 2010, Phish 2013, and Rascal Flatts 2012.

15.   Aerosmith held two shows at Boardwalk Hall, one in 2010

and one in 2014. In 2014, the director of ticketing for Live Nation

National  Touring  sent  an  e-mail  to  numerous  venues  that  were

hosting  Aerosmith  concerts  setting  forth  the  ticketing

instructions for the concert.  The e-mail stated "There are a lot

of holds with very specific request."   A copy of the e-mail is set

forth below:

---

**From:** Jen Zahorchak [mailto:JenZahorchak@LiveNation.com]
**Sent:** Thursday, April 03, 2014 9:02 PM
**To:** Josh Iden; Emma Pancoast; Paul Macdonald; Kathryn Deamaral; Kelly Benhase; Daniel Mollway; Amanda Kopec; So Cal Ticketing; Valenzuela, John; lilla.zepeda@msg.com; Flores, Janet; Frank, Yvette; Fujii, Megumi; Jozee Perrelli; Andrea Bradley; Deb Murdock; Rochelle (Scott) Henningfield; april.killian@pepsicenter.com; Buck Williams; 'Caroline Zalman'; David H Wallace; Xavier Alvarado; Tara Bryant; Williams, Sam; Tommy Nash; Harris, Bill; Jeffrey Weinhold; Redlowsk, Bridgette; Ronald Clause; Dave Clark
**Cc:** Rinat Radvinsky; Carrie Paglinco; Ryan McElrath; Courtney Caswell; Chase Rosencrantz
**Subject:** Aerosmith 2014 - Ticketing Letter + Timeline

Hello –

Attached please find the ticketing letter and timeline for Aerosmith: Let Rock Rule.

Once your event build is complete, please send me the following starting reports: starting audit, maptype of each hold, and a scaling map. Non-TM events please also send a ticket header and event link.

A few key notes:

- Announce time is TBD
- VIP Package Pricing for Aerosmith Packages is TBD
- Facebook Presale password is TBD
- There are a lot of holds with very specific requests. Please do your best to meet the hold requirements, and reach out to me if you get stuck. If you had a show in 2012, please try to carve out a similar hold scenario (I've included Deidra's 2012 suggestions for a good reference).
- Markets with American Express offers – to calculate the breakdown for AMEX, please take remaining opens after holds – 10% goes to public hold, and 1,000 tickets should be left in OPEN for Fan Club & other presales. After this, the remaining inventory will be your AMEX allotment. Please follow percentage breakdowns in the letter to carve out to specific card types.
- Some markets will have a Groupon offer at the onsale – Chase will be in touch regarding offer setup.

Please remember to place your credit card post sale inventory as well.
Thank you!

**Jen Zahorchak** | Director - Ticketing | National Touring
Email: jenskotba@livenation.com
Phone: (310) 867-7107 Cell: (310) 691-9008 Fax: (310) 861-5284
9348 Civic Center Drive, Beverly Hills, CA 90210
www.LiveNation.com



16. Defendants' withholding of tickets was not based on the venue hosting the Aerosmith concerts, but were global instructions for all Aerosmith concerts, including the concerts in New Jersey.

17. At least 2,030 tickets were withheld by Defendants for the Aerosmith concert in 2014. Defendants' withheld more than 5% of tickets destined to be available for sale to the general public which violates the Statute. A copy of the hold document is set forth below:

| AEROSMITH HOLDS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **NUMBER** | **NAME** | **NOTES** | **P1** | **P2** | **P3** | **P4** | **DETAILS** |
| OPEN | VIP1HOLD | (50) 1ST 10 | 50 | | | | SPLIT W/PLAT |
| F-HOLD | PLAT | 1ST 10 ROWS | 300 | | | | 1ST 15 FLOOR, 1ST 5 SIDE |
| 1-BAND | BAND#ST | 20 FR | 120 | | | | 100 1ST 10 |
| 1-BAND | BAND#JP | 20 FR STAGE LEFT | 120 | | | | 100 1ST 10 |
| 1-BAND | BAND#JK | 20 1ST 5 BY THRUST | 20 | | | | |
| 1-BAND | BAND#BW | 20 1ST 5 STAGE RIGHT | 20 | | | | |
| 1-BAND | BAND#TH | 20 1ST 15 STAGE RIGHT | 20 | | | | |
| 2-HOLD | HK | ROWS 5-10 BOWL | 10 | | | | 1ST SECTION DOWNSTAGE EDGE |
| 1-BAND | SUPPC | 10 1ST 20 ROWS | 20 | 20 | | | 10 P1 STG LEFT MAX ROW 15 |
| 1-BAND | SUPPB | | 100 | | | | LOW BOWL SIDE STG LEFT |
| 1-BAND | BAND#BUY | | 20 | | | | |
| 2-LNT | LNT | 20 FLOOR ROWS 10-14 | 50 | 10 | | | 30 P1 LOWER CLOSEST TO STAGE |
| OPEN | VIP4HOLD | | 50 | | | | B/A AFTER OTHER HOLDS |
| OPEN | VIP2HOLD | | 1000 | | | | B/A AFTER OTHER HOLDS |
| OPEN | VIP3HOLD | | 100 | | | | B/A AFTER OTHER HOLDS |
| 4- | MKTG | | | | | | |
| 8-HOLD | BUILD | NOTHING IN 1ST 10 | | | | | |
| HOLD | PUBLIC | | | | | | 10% OF OPENS AFTER HOLDS |
| OPEN | AMXCNT | | | | | | 7% P1 |
| OPEN | AMXPLT | | | | | | 20% P1 |
| OPEN | AMXGLD | | | | | | 73% P1/P2 |
| OPEN | AMXBLU | | | | | | 80% |
| | | | | | | | |
| **POST SALES** | | | | | | | |
| OPEN | AMXGLDHOLD | | 100 | | | | |
| OPEN | AMXBLUHOLD | | | | | | 400 TICKETS |
| OPEN | CITIPOSTHOLD | | 200 | 200 | | | |

18. For Aerosmith's 2010 concert, Live Nation circulated a chart of venues hosting the concert along with a chart setting forth what tickets to withhold. Defendants withheld at least 1,292 tickets to the 2010 concert. The withholding of tickets to this concert was more than 5% of tickets destined to be available for sale to the general public and a violation of the Statute. A copy of the chart is set forth below:



19.   Prior to Luke Bryan's concert in 2014, a Tour Ticketing Letter was circulated by Defendants to the venues hosting the concerts showing the amount of tickets that needed to be withheld for **each concert** regardless of the venue. At least 384 tickets were withheld by Defendants. The withholding of tickets to this concert was more than 5% of tickets destined to be available for sale to the general public and a violation of the Statute. A copy of the letter is set forth below:

## TICKET HOLDS

### LUKE BRYAN
- One Hundred Twenty (120) COMP tickets
  - 20 GA
  - 40 within rows 5-10 on the floor
  - 60 lower bowl within first four rows of third section from stage (on left or right side of house)
- Forty (40) COD tickets held for potential label purchase

### VIP TICKET PACKAGES
- Three Hundred (300) P1 tickets within rows 1-10 of the lower bowl in second section from stage on left and right side of house. (150 second section stage right and 150 second section stage left)
- CID Entertainment is handling our VIP Packages. Please send approved holds to David Sher davidsher@cidentertainment.com and Mike Strauss mikestrauss@cidentertainment.com (267.528.0400) per CID's ticketing letter.
- VIP tickets should be available during ALL presales, as well as the public on sale.
- VIP tickets go on sale via Ticketmaster starting Tuesday prior to on sale at 10am local time (so they are available during Luke's fan club presale) and stay enabled for ALL presales.
- VIP ticket limits: 4 tickets pre-sale. 6 tickets public on sale
- **Please hold back 30 VIP tickets for the public on sale.**

### TOUR SPONSORS
**1) CABELA'S**
- 10 P1 tickets for potential purchase lower bowl
- 20 tickets in rows 6-8 on the floor

**2) Miller Lite – TBD**

**3) Potential Sponsors**
- 24 P1 tickets – all tickets together and in rows 6-10 on floor
- 20 P1 tickets for potential purchase lower bowl

**4) GAC**
- 10 GA tickets. These tickets are to remain on hold. A will call list will be provided day of show.

**5) CITI**

- Citi Preferred - 100 P1 reserved tickets to be sold as Citi Preferred
- Citi Preferred may be released for public sale after all other inventory is sold out in each price level or 4 weeks prior to show date, which ever occurs first

### RED LIGHT MANAGEMENT –
- Thirty (30) P1 tickets for potential purchase within rows 6-10 lower bowl in second section from stage

## SUPPORT
### SUPPORT #1 – Lee Brice
- Forty (40) COMP tickets
- Thirty (30) COD tickets held for potential label purchase

### SUPPORT #2 – Cole Swindell
- Twenty (20) COMP tickets
- Twenty (20) COD tickets for potential label purchase

20.   Lady Gaga held concerts at Boardwalk Hall in 2010, 2011, and 2014. Again, Defendants' withholding was not limited to just this venue or just this artist. The amount of tickets withheld were approximately 2,918 for the 2010 concert and 3,332 in 2011. The ticketing instructions for Lady Gaga's 2010 tour are for **all North America Arenas** as set forth below.

**Lady Gaga**
**Monster Ball Tour 2010**

Hold Info

Print Date: 10/22/2015
Print Time:  10:23 AM

**CITY: ATLANTIC CITY**　　　　**VENUE:**　　　　**Boardwalk Hall**

**DATE:**　　Sun Jul 4/10

| TICKET HOLDS PAY FORS: | P1 | P2 Flr GA | P2 Res | P3 | TOTAL | Hold Code | Location Notes |
|---|---|---|---|---|---|---|---|
| Lady Gaga | 70 | 30 | | | 100 | 1#gagahold | Hold groups of 4 or 6 or 8, no block hold. Hold 60% on stage left, 40% stage right, in lower third of section starting in 4th row at the main stage, and going to the b-stage or 1 section past b-stage if necessary. |
| Support | | 10 | 10 | | 20 | 1#supphold | best P2's |
| Crew | 40 | | | | 40 | 1#crewhold | good seats near artist holds but behind artist holds |
| Artist Sponsors | 50 | | | | 50 | 1#sponhold | include some artist quality holds, the rest good |
| LNGT | 40 | 40 | 10 | | 90 | 2#lngthold | same as artist holds |
| WME | 30 | | | | 30 | 2#wmehold | include some artist quality holds, the rest very good |
| Virgin Mobile | 20 | 20 | | | 40 | 2#vmobhold | half in row 3 and half in row 6 within first 2 sections on either side of stage |
| Label (IGA) | 6 | | 48 | 6 | 60 | 2#igahold | some must be great, with the rest within the best 50% of price level |
| Label Promo | | | | 40 | 40 | 2#labpromhold | best of the price level |
| Venue | 42 | 30 | | 62 | 134 | 8 | no floors |
| Local Promoter | 50 | | 50 | | 100 | 5 | some decent seats |
| LN Exec/Alliance | 2 | | | | 2 | 2#lnexechold | some decent seats |
| Pool | 200 | | 200 | 100 | 500 | | Must be in groups of 6 or 8 scattered throughout best 50% of price level. |
| Caesars | 910 | | 160 | | 1,070 | 7#caesarshold | great seats |
| Taj | 300 | | 16 | | 316 | 7#trumphold | great seats |
| Borgata | 150 | | 250 | | 400 | 7#borgatahold | 150 to be great |
| **PRESALES:** | | | | | | | |
| Citi presale | | | | | | | all opens after holds & public holdback but must have some great seats |
| Citi preferred | 100 | | 100 | | 200 | | hold the best 400 remaining Citi opens after Citi presale ends, prefer P1/P2 |
| Virgin Mobile | | | | | | | must be within best 40% of price level and must include some great seats |
| Venue Presale | | | | | | | n/a |
| VIP Packages | | | | | | | P1=must be great seats starting at main stage and going no more than 1 section past b-stage, in low rows.  Close to party room if possible.  P2=must be best of price level, lower bowl if available (not side stage though) |
| Public Holdback | | | | | | | Hold a mix of seats, front to back. |
| **COMPS:** | | | | | | | |
| Sprint | 8 | | | | 8 | 4#sprinthold | within best 50% of price level |
| Radio Promo | 20 | 60 | 40 | 80 | 200 | 4#radiohold | decent to mid-grade |
| Reviewer | 20 | | | | 20 | 4#reviewhold | hold on stage left, directly in front of b-stage between rows 8-10, on aisle |
| Virgin Mobile | 10 | | | | 10 | 4#vmobchold | half in row 3 and half in row 6 within first 2 sections on either side of stage |
| **TOTAL** | 2,068 | 190 | 884 | 288 | 3,430 | | |

**THE HOLDS ARE TO BE MANAGED AS FOLLOWS**
No seats may be held in the first 6 rows of the stands unless authorized by Live Nation Global Touring (LNGT).
Orders may be processed once LNGT have approved the final manifest, starting the day after public onsale.
ALL SEATS HELD ARE CONSIDERED SOLD.  THERE ARE NO RETURN PRIVILEGES.
All payments are to be made to the ticket agent or the Venue, not LNGT or the local promoter.
No tickets are to be released without full payment, no consignments, no credit
and no paying at settlement.
No comps unless authorized by LNGT.
Assign only even amounts per row, no odd numbers unless asked for.

Copy of LGG2010-3sheet-AtlanticCity 3.26.10 Hold Info

Live Nation Global Touring
Toronto, CANADA

Lady Gaga
Monster Ball Tour 2010

Received 04/29/2019
Print Time: 11:47 AM

**CITY: ATLANTIC CITY**       **VENUE:**       **Boardwalk Hall**

**DATE:**   **Sat Feb 19/11**

| TICKET HOLDS: PAY FORS: | P1 | P2 Flr GA | P2 Res | P3 | TOTAL | Hold Code | Location Notes |
|---|---|---|---|---|---|---|---|
| Lady Gaga | 70 | 30 | | | 100 | 1#gagahold | Hold groups of 4 or 6 or 8, no block hold. Hold 60% on stage left, 40% stage right, in lower third of section starting in 4th row at the main stage, and going to the b-stage or 1 section past b-stage if necessary. |
| Support | | 10 | 10 | | 20 | 1#supphold | best P2's |
| Crew | 40 | | | | 40 | 1#crewhold | good seats near artist holds but behind artist holds |
| Artist Sponsors | 30 | | | | 30 | 1#sponhold | include some artist quality holds, the rest good |
| LNGT | 40 | 40 | | | 80 | 2#lngthold | same as artist holds |
| WME | 20 | | | | 20 | 2#wmehold | include some artist quality holds, the rest very good |
| Virgin Mobile | | | | | | 2#vmobhold | half in row 3 and half in row 6 within first 2 sections on either side of stage |
| Label (IGA) | 40 | | 40 | 20 | 100 | 2#igahold | some must be great, with the rest within the best 50% of price level |
| Label Promo | | | 54 | 50 | 104 | 2#labpromhold | best of the price level |
| Venue | 80 | 40 | 20 | 80 | 220 | 8 hall | no floors |
| Local Promoter | 50 | | 50 | | 100 | 6 lnlo | some decent seats |
| LN Exec/Alliance | | | | | | 2#lnexechold | some decent seats |
| Pool | 200 | | 200 | 100 | 500 | 5 pool | Must be in groups of 6 or 8 scattered throughout best 50% of price level. |
| Caesars | 1,310 | | 60 | | 1,370 | 7#caesarshold | great seats |
| Taj | 146 | | 114 | | 260 | 7#trumphold | great seats |
| Borgata | 150 | | | | 150 | 7#borgatahold | 150 to be great |
| PRESALES: | | | | | | | |
| Citi presale | | | | | | | all opens after holds & public holdback but must have some great seats |
| Citi preferred | 200 | | 200 | | 400 | | hold the best 400 remaining Citi opens after Citi presale ends, prefer P1/P2 |
| Virgin Mobile | | | | | | | must be within best 40% of price level and must include some great seats |
| Venue Presale | | | | | | | n/a |
| VIP Packages | | | | | | | P1=must be great seats starting at main stage and going no more than 1 section past b-stage, in low rows. Close to party room if possible. P2=must be best of price level, lower bowl if available (not side stage though) |
| Public Holdback | | | | | | | Hold a mix of seats, front to back. |
| COMPS: | | | | | | | |
| Sprint | 8 | | | | 8 | 4#sprinthold | within best 50% of price level |
| Radio Promo | 20 | 60 | 40 | 80 | 200 | 4#radiohold | decent to mid-grade |
| Reviewer | 20 | | | | 20 | 4#reviewhold | hold on stage left, directly in front of b-stage between rows 8-10, on aisle |
| Virgin Mobile | | | | | | 4#vmobhold | half in row 3 and half in row 6 within first 2 sections on either side of stage |
| TOTAL | 2,424 | 180 | 788 | 330 | 3,722 | | |

**THE HOLDS ARE TO BE MANAGED AS FOLLOWS**
No seats may be held in the first 6 rows of the stands unless authorized by Live Nation Global Touring (LNGT).
Orders may be processed once LNGT have approved the final manifest, starting the day after public onsale.
ALL SEATS HELD ARE CONSIDERED SOLD.  THERE ARE NO RETURN PRIVILEGES.
All payments are to be made to the ticket agent or the Venue, not LNGT or the local promoter.
No tickets are to be released without full payment, no consignments, no credit
and no paying at settlement.
No comps unless authorized by LNGT.
Assign only even amounts per row, no odd numbers unless asked for.

Copy of LGG2011-3sheet-AtlanticCity Hold Info

Live Nation Global Touring
Toronto, CANADA

     21.  The withholding of tickets to the Lady Gaga concerts in

New Jersey was in excess of 5% of tickets destined to be available

for sale to the general public and a violation of the Statute.

22. In July 2013, Live Nation presented a concert by Beyonce at the Boardwalk Hall in Atlantic City, New Jersey. Boardwalk Hall had a seating capacity of 12,962 for the concert. Live Nation withheld over 2,000 tickets for the artist, label, sponsors, casinos, venue, local promoters and itself as set forth in the chart below. This included the majority of the best seats in the house.



BEYONCE
Starting in The Mrs. Smith Show                                        Hold Info                    Print Date: 10/22/2015
                                                                                                      Print Time: 11:50 AM

CITY: ATLANTIC CITY                          VENUE:          Boardwalk Hall
DATE:    Fri Jul 26/13

** NO SIDE STAGE HOLDS FOR ANY HOLDS OR PRESALES **

| TICKET HOLDS PAY FORS: | P1 | P2 | P3 | P4 GA | P5 | P6 | TOTAL | Hold Code | Location Notes |
|---|---|---|---|---|---|---|---|---|---|
| Artist/Mgmt | 50 | 50 | 10 | 110 | | | 220 | 1#art | P1=Hold groups of 6 to 10, no block hold. Hold on aisle when possible, in lower third of first section on either side of stage starting in 4th row. Do not hold on DSE side, so as to get a fuller view of stage. If required go into 2nd section from stage as well. Split 50/50 between stage left/right. P2=same rules as above, in best P2 sections in lower bowl (but not side stage). |
| LN Global Touring | 18 | 10 | | 10 | | | 38 | 2#lngt | same quality as artist holds |
| Label (Sony) | 6 | 40 | 10 | 16 | | | 72 | 2#sony | Must have some great seats that are same quality as artist hold. Otherwise hold good seats. |
| Sponsor: Pepsi | 12 | 20 | 8 | 10 | | | 50 | 2#pepsi | Same instructions as above. |
| H&M | | | | | | | | | none |
| Coty | | | | | | | | | none |
| Support/SuppLabel | | 10 | | 10 | | | 20 | 1#supp | good seats |
| Local Promoter | 50 | 140 | | | | | 190 | 3 | include some great seats |
| Venue | 70 | 50 | 84 | 50 | | 44 | 298 | 8 | |
| Casino Buys | 760 | 290 | 10 | | | | 1,060 | 5/7 | include some great seats |
| LN Alliance | | | | | | | | 2#lnall | if approved |
| PSS Red Card | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| public | | | | | | | | H | In each price level, hold 50 to 100 decent scattered seats. For the balance at each price level, hold the very worst solid blocks of seats! Solid blocks!! Very worst!! |
| | | | | | | | | | |
| PRESALES: | | | | | | | | | |
| | | | | | | | | | |
| Fan Club/VIP Pkgs | | | | | | | | f | P1/P2=starting in best sections hold every 3rd row holding full rows if possible. For the balance hold the best sections, again holding full rows where possible. |
| Mastercard | | | | | | | | | all opens after holds and public |
| Venue | | | | | | | | | will sell from unsold mastercard inventory |
| | | | | | | | | | |
| COMPS: | | | | | | | | | |
| | | | | | | | | | |
| Marketing Promo | 20 | 40 | 30 | 30 | | | 120 | 4#promo | mid-grade (not the very best or worst) |
| Reviewer | 20 | | | | | | 20 | 4#review | in 2nd section from stage in groups of 4 or 6, between 8-12 rows up |
| TOTAL | 1,006 | 650 | 152 | 236 | | 44 | 2,088 | | |

THE HOLDS ARE TO BE MANAGED AS FOLLOWS
Orders may be processed once LNGT have approved the final manifest, starting the day after public onsale..
ALL SEATS HELD ARE CONSIDERED SOLD.  THERE ARE NO RETURN PRIVILEGES.
All payments are to be made to the ticket agent or the Venue, not LNGT or the local promoter.
No tickets are to be released without full payment, no consignments, no credit
and no paying at settlement.
No comps unless authorized by LNGT.
Assign only even amounts per row, no odd numbers unless asked for.

BEYONCE2013-3sheet-AtlanticCity Hold Info

Live Nation Global Touring
Toronto, CANADA

23. Defendants' withholding was more than 5% of tickets to the Beyonce concert destined to be available for sale to the general public and a violation of the Statute.

24. Further, Live Nation admitted in its Ticketing Information instructions for Beyonce's 2013 tour that "The ticket inventory for this show will be strictly controlled by Live Nation Global Touring who has final say over all holds and releases including those from the venue and from local Live Nation offices." (emphasis in original).

25. Jimmy Buffet held concerts at Boardwalk Hall in 2008, 2009, and 2012. For each concert, Defendants withheld numerous tickets. Over 5,000 tickets were withheld for the concert in 2008, over 2,800 tickets withheld in 2009, and over 2,000 tickets withheld in 2012 as set forth in the charts below.

| | | | | | TOTAL | |
| | $226.00 | $156.00 | $96.00 | $66.00 | CAPACITY | |
| CAPACITY: | 4983 | 5418 | 3051 | 1936 | 15388 | SEATING CAP |
| LESS KILLS: | 0 | 1516 | 0 | 0 | 1516 | === |
| SELLABLE CAPACITY: | 4983 | 3902 | 3051 | 1936 | 13872 | NET CAP |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| CAESARS (SPONSOR) | 490 | 570 | 10 | 0 | 1070 | E-HOLD |
| BAND | 306 | 48 | 0 | 0 | 354 | 1-HOLD |
| LANDSHARK | 100 | 0 | 0 | 0 | 100 | 2-HOLD |
| MARGARITAVILLE | 28 | 0 | 0 | 0 | 28 | 3-HOLD |
| PARROTHEAD | 0 | 0 | 0 | 285 | 285 | 4-HOLD |
| LIVE NATION | 90 | 100 | 0 | 0 | 190 | 5-HOLD |
| RADIO PROMOTION | 0 | 0 | 18 | 0 | 18 | 6-HOLD |
| ISL | 50 | 140 | 142 | 0 | 332 | 7-HOLD |
| BUILDING | 99 | 94 | 102 | 140 | 435 | 8-HOLD |
| ADA | 60 | 60 | 60 | 16 | 196 | 9-HOLD |
| | | | | | | |
| | | | | | | |
| TOTAL HOLDS: | 1223 | 1012 | 332 | 441 | 3008 | |
| | | | | | | |
| | | | | | | |
| AVAILABLE TO PURCHASE: | 3760 | 2890 | 2719 | 1495 | 10864 | |

JIMMY BUFFETT
AND THE CORAL REEFER BAND
BOARDWALK HALL
ATLANTIC CITY, NJ
SUN AUG 24TH 2008 8:00PM

JIMMY BUFFETT
AND THE CORAL REEFER BAND

## BOARDWALK HALL
## ATLANTIC CITY, NJ
## SUN AUG 24TH 2008 8:00PM

|  | $226.00 | $156.00 | $96.00 | $66.00 | TOTAL CAPACITY |  |
|---|---|---|---|---|---|---|
| CAPACITY: | 6368 | 4874 | 2226 | 1510 |  | 14978 SEATING CAP |
| LESS KILLS: | 0 | 144 | 0 | 0 | 144 | === |
| SELLABLE CAPACITY: | 6368 | 4730 | 2226 | 1510 |  | 14834 NET CAP |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| CAESARS (SPONSOR) | 1150 | 1050 | 550 | 0 |  | 2750 E-HOLD |
| BAND | 494 | 132 | 0 | 0 |  | 626 1-HOLD |
| LANDSHARK | 150 | 0 | 0 | 0 |  | 150 2-HOLD |
| MARGARITAVILLE | 34 | 0 | 0 | 0 |  | 34 3-HOLD |
| PARROTHEAD | 0 | 0 | 0 | 300 |  | 300 4-HOLD |
| LIVE NATION | 104 | 200 | 0 | 0 |  | 304 5-HOLD |
| FLEX PRICING P1/P2 | 1232 | 0 | 0 | 0 |  | 1232 6-HOLD |
| ISL | 180 | 177 | 125 | 0 |  | 482 7-HOLD |
| BUILDING | 140 | 133 | 68 | 126 |  | 467 8-HOLD |
| ADA | 154 | 12 | 0 | 0 |  | 166 9-HOLD |
|  |  |  |  |  |  |  |
| TOTAL HOLDS: | 3638 | 1704 | 743 | 426 | 6511 |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| AVAILABLE TO PURCHASE: | 2730 | 3026 | 1483 | 1084 | 8323 |  |

JIMMY BUFFETT
August 4th 2012 8pm
Boardwalk Hall
Atlantic City, NJ

|  | $228.00 | $158.00 | $98.00 | $68.00 | TOTAL CAPACITY |  |
|---|---|---|---|---|---|---|
| CAPACITY: | 2417 | 4249 | 3130 | 4162 |  | 13958 SEATING CAP |
| LESS (flex) KILLS: | 0 | 80 | 0 | 0 | 80 | === |
| SELLABLE CAPACITY: | 2417 | 4169 | 3130 | 4162 |  | 13878 NET CAP |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| PRODUCTION HOLDS | 0 | 0 | 0 | 0 | 0 |  |
| BAND | 446 | 48 | 0 | 0 | 494 |  |
| MARGARITAVILLE | 30 | 0 | 0 | 0 | 30 |  |
| LANDSHARK | 75 | 0 | 0 | 0 | 75 |  |
| PROMOTIONS | 4 | 0 | 124 | 0 | 128 |  |
| LIVE NATION | 50 | 0 | 0 | 50 | 100 |  |
| BUILDING | 80 | 60 | 98 | 138 | 376 |  |
| FAN CLUB | 0 | 0 | 0 | 300 | 300 |  |
| ISL/Casino Buy | 228 | 219 | 72 | 0 | 519 |  |
| ADA | 60 | 60 | 60 | 16 | 196 |  |
|  |  |  |  |  |  |  |
| TOTAL HOLDS: | 973 | 387 | 354 | 504 | 2218 |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| TOTAL FLEX: | 0 | 2016 | 1069 | 2015 | 5100 |  |
|  |  |  |  |  |  |  |
| AVAILABLE TO PURCHAS | 1444 | 1766 | 1707 | 1643 | 6560 |  |

26. Defendants withheld more than 5% of tickets destined to be available for sale to the general public to each Jimmy Buffet concert in violation of the Statute.

27. The same is true for concerts by Britney Spears in 2011 (over 940 tickets withheld) and Elton John in 2008 (over 4,500 tickets withheld). Charts showing those holds are set forth below.

**BRITNEY SPEARS**
**Femme Fatale Tour 2011**

Hold Info

Print Date: 10/22/2015
Print Time: 1:07 PM

CITY: Atlantic City        VENUE:        Boardwalk Hall

DATE:    Sat Aug 6/11

| TICKET HOLDS PAY FORS | PL1 | PL2 | PL3 | PL4 | PL5 | TOTAL | Hold Code | Location Notes |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | P1=front row next to runway.  For P2 see holds map. |
| Britney Spears | 4 | 100 | | | | 104 | 1#brit | |
| Nicki Minaj | | 60 | | | | 60 | 1#nick | see holds map |
| Support Acts | | 40 | | | | 40 | 1#supp | decent stands but no better than Britney or Minaj holds |
| WME | | 10 | | | | 10 | 2#wme | decent stands no further than b-stage, in lower half of section |
| | | | | | | | | P1=front row next to Britney front row.  For P2 see holds map. |
| LN-LA Touring | 2 | 30 | | | | 32 | 2#inla | |
| LNGT | | 10 | | | | 10 | 2#lngt | decent stands no further than b-stage, in lower half of section |
| Britney Label-Sony | | 40 | | | | 40 | 3#blab | P1=front row next to LN-LA front row. P2=good stands no further than one section past b-stage |
| Minaj Label | | 20 | 10 | | | 30 | 3#mlab | P2=no worse than Britney label holds. P3=best |
| Support Acts Labels | | 20 | 20 | | | 40 | | cannot be better than Britney or Minaj label holds |
| Tour Sponsor | | 50 | | | | 50 | 2#spon | see holds map |
| Venue | | 108 | 50 | 60 | | 218 | 8, 7# | hall, ISL #hilton,nugget |
| LN Local | | 50 | | | | 50 | 5 | no floor or P5 holds |
| LN Exec/Alliance | | 30 | 10 | | | 40 | 2#inex | include some great stands, otherwise no further than one section past b-stage |
| Platinum | | | | | | | | see holds map |
| Public Holdback | | | | | | | | P1=back half of floors.  P2=a few floors but mostly stands, scattered mid-grade seats. P3-P5=scattered.  Also hold additional sections as noted in email. |
| PRESALES: | | | | | | | | |
| Britney Presale | | | | | | | | see holds map |
| Minaj Presale | | | | | | | | see holds map |
| Citi Presale | | | | | | | | remaining opens but include some great seats (sharing with Britney presale) |
| Citi Preferred | | | | | | | n/a | Not a presale.  400 total, will confirm locations later but to come from P1-P3 |
| ln.com/radio/venue | | | | | | | | selling from Citi inventory (whatever is left by Wednesday |
| VIP Pkg-front row | | | | | | | | see holds map |
| VIP Pkg-hospitality | | | | | | | | see holds map |
| VIP Pkg-gold | | | | | | | | see holds map |
| VIP Pkg-silver | | | | | | | | see holds map |
| COMPS: | | | | | | | | |
| Radio Promo-Local | 8 | | | 198 | | 206 | 4#radl | P1=off centre in back half of P1's. P2/P3=mid-grade stands not the best |
| Radio Promo-Nat'l | | | | | | | | EW P2 hold must be within first 2 rows in stands no further than B-stage |
| Reviewer | | 10 | | | | 10 | 4#rev | In section facing B-stage, 4+6 on aisle between rows 8-10 |
| | | | | | | | | |
| TOTAL | 14 | 578 | 90 | 258 | | 940 | | |

**THE HOLDS ARE TO BE MANAGED AS FOLLOWS**
No seats may be held on the floor or at the lowest price unless authorized by Live Nation Global Touring (LNGT).
Orders may be processed once LNGT have approved the final manifest, starting the day after public onsale.
ALL SEATS HELD ARE CONSIDERED SOLD.  THERE ARE NO RETURN PRIVILEGES.
No comps unless authorized by LNGT, or unless they are contractually agreed upon.
Assign only even amounts per row, no odd numbers unless asked for (outside of presale allotments, they may get odd numbers of seats).

| ELTON JOHN | $227.00 | $177.00 | $127.00 | $87.00 | $67.00 | TOTAL CAPACITY | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| SATURDAY, JULY 19, 2008 | | | | | | | |
| BOARDWALK HALL | | | | | | | |
| ATLANTIC CITY, NJ | | | | | | | |
| CAPACITY: | 5110 | 2896 | 2649 | 4589 | 2046 | 17290 | |
| LESS KILLS: | 64 | 1844 | 1166 | 40 | | 3114 | |
| SELLABLE CAPACITY: | 5046 | 1052 | 1483 | 4549 | 2046 | 14176 | |
| | | | | | | | |
| HOLDS AFTER FLEX | | 120 | 120 | | | 240 | D-HOLD |
| CAESARS | 1450 | | 950 | 20 | | 2420 | E-HOLD |
| HRA | 88 | | | | | 88 | 1-HOLD |
| BAND | 294 | | | | | 294 | 2-HOLD |
| FAN CLUB | 150 | | | | | 150 | 3-HOLD |
| LIVE NATION | 600 | | | | | 600 | 4-HOLD |
| FLEX | 1310 | 0 | | | | 1310 | 5-HOLD |
| | | | | | | 0 | 6-HOLD |
| CASINO | 230 | 20 | 415 | 95 | | 760 | 7-HOLD |
| BUILDING | 92 | | | 102 | 70 | 264 | 8-HOLD |
| ADA | 90 | 30 | 30 | 34 | 12 | 196 | 9-HOLD |
| | | | | | | 0 | |
| | | | | | | 0 | |
| PRODUCTION/FLEX KILLS | | | | | | 0 | === |
| TOTAL HOLDS: | 4304 | 50 | 1395 | 251 | 82 | 6082 | |
| | | | | | | | |
| AVAILABLE TO PURCHASE: | 742 | 1002 | 88 | 4298 | 1964 | 8094 | |

28.    Defendants withholding of tickets for the Britney Spears and Elton John concerts was in excess of 5% of tickets destined to be available for sale to the general public and violated the Statute.

29.    For Kayne West's 2014 tour, Defendants sent out ticketing information to all venues that were hosting concerts. The ticketing information documents shows that Defendants withheld tickets to **every** Kanye West concert regardless of venue. The instructions, as set forth below, also indicate that only 10% of each price level after holds should be released to the general public.

15

*Holds/ offer setup are listed in the order of priority.*

**(-TRMK) Live Nation Tour Marketing: 10 tickets total**
    -6 GA PIT (in the GA area by the stage/thrust)
    -4 P1 Reserved best 25% of house

**(-LNT) LN Touring: 20 tickets**
    -20 P1 Reserved tickets in rows 1-10 first two sections sidestage in the stands

* * *

**(-ART) Kanye West: varies**
    -150 tickets total: 75 GA Floor (regular GA floor, not VIP GA), 75 P1 Reserved -
    intermixed with VIP and Platinum as best as possible -
    -*Uniondale & Newark*: 300 tickets total: 150 GA Floor (regular GA floor, not VIP),
    150 P1  Reserved - intermixed with VIP and Platinum as best as possible -

**(-CAA) CAA Hold: 20 tickets**
    -20 P1 Reserved tickets best available after holds above

**(-SPON) Sponsor : 30 tickets**
    -30 P1 Reserved scattered best avail after holds above

**(-PRESS) Reviewer Comps: varies**
    -6 P1 Reserved tickets best 25% of house
    -Uniondale & Newark: 14 P1 Reserved tickets best 25% of house

**(-LABL) Label Hold: 40 ticket total**
    -30 P1 Reserved tickets best avail scattered
    -10 P2 Reserved Tickets best avail

**(-MKTG) Local Marketing: varies**
Varies per local marketing needs with tour approval from Kelly Strickland - Live Nation

**Venue Holds – Vary by Market:**
Standard Venue Holds

**(-PUBL) Public Holdback:**
     - 10% of each price level after Holds, please mix in some good locations.
     -to be released onto general Opens at the conclusion of the presale period

30. Defendants' withholding of tickets set forth above and/or withholding of other tickets to the Kanye West concert in New Jersey was in excess of 5% of tickets destined to be available for sale to the general public and in violation of the Statute.

31. For Phish's 2013 Fall Tour, Defendants withheld at least 3,859 tickets out of 14,135 or 27% of the available tickets for each of the three dates Phish performed, as set forth in the chart below. The withholding of more than 5% of tickets destined to be available for sale to the general public to the 2013 Phish concerts violated the Statute.

```
S3 / Ticket Limits / Availability
LEVEL          GA        RES       RES       RES      Totals
L-PASS       174.00    174.00    174.00    174.00
--------------------------------------------------------------------
PLevels       1-7       8-42      43-58     59-70
(X Nums)                80-96     71-79
--------------------------------------------------------------------
Capacity      3065      4619      5539      912      14135
Total Opens    357       626       998      184       2165
Selcls Opens     0         0         0        0          0
Obson Opens      0         0         0        0          0
--------------------------------------------------------------------
Total Holds    989      1548      1085      237       3859
Selcls Holds     0         0         0        0          0
Obson Holds      0         0         0        0          0
Usld Q Holds     4        33        80       13        130
--------------------------------------------------------------------
```

32. In addition, Defendants withheld at least 1,319 tickets for each of the three shows of Phish's 2010 Fall Tour at Boardwalk Hall. The chart below shows the withheld tickets.

```
------------------------ UNSOLD TICKETS ------------------------
OPEN      1332    1484    2607    420    5843    350580.00
2-LABL            40                      40      2400.00
3-BOX      50     169     109     36     364     21840.00
4-LNVP            104                     104      6240.00
6-LN       70     280                     350     21000.00
8-HALL     60     212     108             380     22800.00
9-ADA             196                     196     11760.00


UNSOLD    1512    2485    2824    456    7277    436620.00


SEATING
CAP       3065    4619    5539    912    14135    848100.00


NET
CAP       3065    4619    5539    912    14135    848100.00
```

33.   Defendants' withholding of more than 5% of tickets destined to be available for sale to the general public to the Phish concerts in 2010 was a violation of the Statute.

34.   Defendants withheld approximately 2,519 tickets for the Maroon 5 concert at the IZOD Center. This consisted of the following holds:

       a. 178 labeled "Comp"

       b. 22 labeled "Open"

       c. 14 labeled "D-Hold"

       d. 932 labeled "E-Hold"

       e. 110 labeled "2-Bldg" for IZOD Center/NJSEA holds

       f. 142 labeled "4-Res"

       g. 162 labeled "5-Hold"

       h. 462 labeled "6-Hold"

       i. 86 labeled "8-Hold"

       j. 261 labeled "9-Hold"

       k. 2 unknown holds

35.   From those holds for the IZOD Center/NJSEA at least eight Maroon 5 tickets ranging from $291 to $460 were for sale on the secondary ticket market. The highest valued box-office ticket that night, according to the manifest, was $121.00.

36.   Defendants withheld more than 5% of tickets destined to be available for sale to the general public to the Maroon 5 concert on February 23, 2013 in violation of the Statute.

37.   Defendants also withheld 84% of tickets to Pink's March 2013 concert at the IZOD Center in East Rutherford, New Jersey making only 16% available at the general public on sale.[1] Defendants withheld more than 5% of tickets destined to be available for sale to the general public and thus violated the Statute.

38.   In addition, Defendants withheld 67% of tickets to One Direction's July 2013 concert at the IZOD Center in East Rutherford, New Jersey making only 33% available at the general public on sale.[2] Defendants withheld more than 5% of tickets destined to be available for sale to the general public and thus violated the Statute.

39.   Further, many of the seats withheld by Defendants for the One Direction concert were then posted for resale on secondary market websites.

---

[1]  http://www.fanfreedom.org/shows-with-holdbacks/, last visited March 27, 2015
[2]  http://www.fanfreedom.org/shows-with-holdbacks/, last visited March 27, 2015

40.   Defendants' withholding of tickets set forth above spans 6 years, 22 different artists, and numerous venues across the United States.

41.   This pattern of behavior represents Defendants' custom and practice of withholding in excess of 5% of tickets to the Concerts destined to be available for sale to the general public no matter what artist was performing and no matter where the concert was being held in violation of the Statute.

42.   Defendants withholding of tickets in violation of the Statute is a systemic problem that is not confined to one artist or arena.

43.   Defendants withheld, and continue to withhold, in excess of 5% of tickets destined to be available for sale to the general public for the benefit of, inter alia, the venue, sponsors, artists, media outlets, and other insiders for the Concerts in New Jersey.

44.   In 1997, then New Jersey Governor Christine Todd Whitman signed legislation establishing the Ticket Brokering Study Commission ("Commission") that inter alia was to compare the impact of regulated and deregulated ticket resale markets for entertainment and sporting events in New Jersey. The Commission issued a report dated October 31, 2001 ("Report") which made a number of findings regarding the causes of ticket unavailability to the general public, and the resulting diversion of tickets from the initial sales to re-sales in the secondary market at prices

higher than face value. The Report found widespread holdback of tickets from sale to the general public and the diversion of those tickets to artists, venues, sponsors, promoters, and other insiders. Many of the tickets that were held back and diverted to others were then resold in the secondary market at substantially more than the face value of the ticket. The Commission concluded that "Hold-backs disproportionately affect the general public's opportunity to obtain tickets in favor of privileged insiders". Report at 26. The Commission recommended that the holdbacks be eliminated or curtailed by statute or regulation in order to insure that the general public will have better access to tickets.

45.   Following the recommendations of the Commission, the New Jersey legislature enacted legislation which required that 95% of tickets destined to be available for sale to the general public be sold to the general public. That legislation was included in the New Jersey Consumer Fraud Act, which stands as one of the most protective consumer statutes in the country.

46.   Defendants withholding of tickets as set forth above and/or in addition to other tickets totals more than 5% of tickets destined to be available for sale to the general public.

47.   The aforesaid acts constitute a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq.* that resulted in damage to the plaintiffs and the plaintiff class.

48.   The Statute applies to any "**person**, who has access to tickets to an event prior to the tickets' release for sale to the general public." <u>N.J.S.A.</u> 56:8-35.1 (emphasis added).

49.   Defendants qualify as a person under the Statute as they have access to tickets to the Concerts prior to their release for sale to the general public.

50.   As a result of the aforesaid actions of Defendants, Plaintiffs, Glickman, Kimmel, and the Plaintiff Class have been damaged.

51.   Plaintiffs and the Plaintiff Class seek damages, compensation, interest, disgorgement, costs of suit, treble damages, attorneys' fees, and all other relief permitted under the CFA and/or the common law, and any other damages deemed just and proper by the Court from the Defendants.

52.   This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who purchased tickets to the Concerts at a ticket price that is higher than the face value of the ticket. Excluded from the class are counsel representing the class and all persons employed by said counsel, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate

families and judicial staff, and any individuals whose interest
are antagonistic to other class members.

## II. **JURISDICTION**

53.   This Court has subject matter jurisdiction over this
action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.
§ 1332(d), as the proposed class contains more than 100 members,
at least one of whom maintains citizenship in a state diverse from
Defendants, and seeks in the aggregate more than Five Millions
Dollars ($5,000,000), exclusive of costs and interest.

## III. **PARTIES**

54.   Plaintiff Steven Glickman ("Glickman") is an individual
residing at 18 Crescent Road, Livingston, New Jersey, a citizen of
the State of New Jersey and a purchaser of tickets to Phish's 2013
Fall Tour on October 31, 2013. Glickman is a representative
plaintiff.

55.   Plaintiff, Andrew Kimmel ("Kimmel") is an individual
residing in Edgewater, New Jersey, a citizen of New Jersey and a
purchaser of tickets to Maroon 5's 2013 "Overexposed" tour at the
IZOD Center on February 23, 2013. Kimmel is a representative
plaintiff.

56.   Defendant Live Nation Entertainment, Inc. is a foreign
corporation engaged in the business of producing, promoting, and
selling and distributing tickets to concerts and other live
entertainment events and has access to tickets prior to their sale

to the general public. Its principal place of business is 9348 Civic Center Drive, Beverly Hills, CA 90210.

57. Defendant Live Nation Worldwide, Inc. is a wholly owned subsidiary corporation of defendant Live Nation Entertainment, Inc. and is registered with the New Jersey Division of Revenue to conduct business in New Jersey, with its registered agent located in West Trenton, Mercer County, New Jersey. LNW is responsible for promoting, selling, distributing, allocating and withholding tickets to concerts and has access to tickets prior to their sale to the general public. Its principal place of business is 9348 Civic Center Drive, Beverly Hills, CA 90210.

58. Defendant Live Nation Concerts is a wholly owned subsidiary of LNE which involves the global promotion of live music events, the operation and management of music venues and the production of music festivals across the world. LNC is responsible for promoting, selling, distributing, allocating and withholding tickets to concerts and has access to tickets prior to their sale to the general public. Its principal place of business is 9348 Civic Center Drive, Beverly Hills, CA 90210.

59. Defendant Live Nation Ticketing, LLC is a foreign limited liability company that is a wholly owned subsidiary of Defendant LNE. LNT is responsible for promoting, selling, distributing, allocating and withholding tickets to concerts and has access to tickets prior to their sale to the general public.

Its principal place of business is 9348 Civic Center Drive, Beverly Hills, CA 90210.

60. Defendant Live Nation Global Touring is a foreign corporation engaged in the business of producing, promoting, and selling and distributing tickets to concerts and other live entertainment events and has access to tickets prior to their sale to the general public. Its principal place of business is 9348 Civic Center Drive, Beverly Hills, CA 90210.

61. Defendants ABC Corp. 1-20 are fictitious names for various subsidiary, parent, predecessor, and/or acquiree entities of Defendants or other entities or persons that have had any interest in or control over the sale, presale, distribution, allocation, or holdback of tickets to the Concerts from sale to the general public and has access to tickets prior to their sale to the general public.

## IV. <u>VENUE</u>

62. Venue in this action properly lies in this District, pursuant to 28 U.S.C. Sec. 1319(a) and the Defendants are subject to personal jurisdiction in the District in which this action is filed.

## V. <u>FACTUAL BACKGROUND</u>

63. Defendants are responsible for promoting the Concerts and for the distribution, sale, allocation, holdback and/or supply of tickets to the Concerts.

64.  Defendants withheld and continue to withhold more than 5% of tickets to the Concerts that are destined to be available for sale to the general public.

65.  Defendants' practice of withholding more than 5% of its tickets to the Concerts that are destined to be available for sale to the general public violates the New Jersey Consumer Fraud Act.

66.  Due to the Defendants' withholding of tickets to the Concerts in violation of the Statute, Glickman and Kimmel paid more for tickets on the secondary market than they would have if Defendants had not violated the Statute and made 95% of tickets that are destined to be available for sale to the general public available to the general public for purchase.

67.  Had Defendants complied with the Statute and made 95% of the tickets to the Concerts destined to be available for sale to the general public available to the general public the cost for tickets on the secondary market would have been less.

68.  Glickman and Kimmel suffered an injury-in-fact and have satisfied Article III standing.

<u>**FACTS RELATING TO PLAINTIFFS**</u>

69.  On August 21, 2013, Plaintiff Glickman purchased two tickets to Phish's 2013 Fall Tour.

70.  Plaintiff Glickman paid $440.95 for the two tickets which, was far in excess of the face value of the tickets.

71.  Face value for the tickets was $57-$63 per ticket.

72. Prior to purchasing tickets on the secondary market, Glickman attempted to purchase tickets at face value on Ticketmaster.com but was unable to.

73. Defendants withheld more than 5% of tickets that were destined to be available for sale to the general public for the benefit of, inter alia, sponsors, artists, media outlets, the venue, and other insiders to Phish's October 31, 2013 concert in violation of the Statute causing Glickman and the Plaintiff Class to purchase tickets at more than face value.

74. Glickman's damages are the difference between what he paid and either the face value of the tickets or what the cost of the tickets would have been had Defendants complied with the Statute.

75. Maroon 5's "Overexposed" tour was held at the IZOD Center on February 23, 2013 located in East Rutherford, New Jersey. The maximum ticket price was $121.

76. On February 6, 2013, Kimmel purchased 2 tickets to Maroon 5's February 23, 2013 concert.

77. Kimmel paid $250 per ticket, which was far in excess of face value of the tickets.

78. Prior to purchasing tickets on the secondary market, Kimmel attempted to purchase tickets at face value but was unable to do so.

79. Defendants withheld more than 5% of tickets that were destined to be available for sale to the general public for the

benefit of, <u>inter alia</u>, sponsors, artists, media outlets, the venue, and other insiders causing Kimmel and the Plaintiff Class to purchase tickets at more than face value.

80.   Kimmel's damages are the difference between what he paid and either the face value of the tickets or what the cost of the tickets would have been had Defendants complied with the Statute.

## CLASS ACTION ALLEGATIONS

81.   Plaintiffs bring this action on their own behalf, and as a class action on behalf of the class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P 23 (b) (3).   The class consists of potentially hundreds of thousands of ticket purchasers to the Concerts victimized by Defendants' unlawful practices.

82.   The class consists of all persons who paid for tickets to the Concerts at a ticket price that is higher than the face value of the ticket.   The class continues to expand as Defendants continue to violate the provisions of the NJCFA with respect to current and future concerts.   The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families

and judicial staff, and any individual whose interests are antagonistic to other class members.

83. Defendants subjected Plaintiffs and each of the class members to unlawful practices and harmed them in the same manner. Now, Plaintiffs and each class member seek to enforce their rights and remedies pursuant to the New Jersey Consumer Fraud Act.

84. <u>Numerosity</u>: The proposed class is so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the class consists of thousands of members.

85. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of their respective Class members in that they suffered similar damages resulting from a single course of conduct by Defendants. Each of the class members asserts the same legal causes of action.

86. <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to the class.

87.  Superiority of Class Action and Impracticability of Individual Actions:  Plaintiffs and the members of the class suffered harm as a result of Defendants' unlawful and fraudulent conduct.  A class action is superior to other viable methods for the fair and efficient adjudication of the controversy.  Individual joinder of all members of the class is impracticable. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants.  It would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct.  Even if members of the class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in the Second Amended Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single Court.  Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

88.  Commonality: There are questions of law and fact common to Plaintiffs and the class that predominate over any questions affecting only the individual members of the class. The common

questions of law and fact include, but are not limited to, the following:

    a.   Whether Defendants withheld more than five percent (5%) of the tickets destined to be available for sale to the general public to the Concerts;

    b.   Whether Defendants' actions violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-35.1;

    c.   Whether Plaintiffs and the putative class sustained damage and loss thereby;

    d.   The scope, extent and measure of damages and equitable relief that should be awarded;

    e.   Whether Defendants' acts and omissions entitle Plaintiffs and the class to treble damages, attorneys' fees, prejudgment interest and cost of suit; and

    f.   Whether Plaintiffs and the class are entitled to declaratory relief.

## COUNT I
### Violation of N.J.S.A. 56:8-35.1

89. Plaintiffs, on behalf of themselves and all others similarly situated, repeat and reallege all prior allegations as if set forth at length herein.

90. Defendants promote the Concerts and are responsible for the distribution, sale, allocation, holdback and/or supply of tickets to the Concerts.

91.   Defendants have access to tickets to the Concerts prior to the tickets' release for sale to the general public.

92.   Defendants withheld more and continue to withhold more than 5% of tickets destined to be available for sale to the general public to the Concerts.

93.   Such practice is in contravention of N.J.S.A. 56:8-35.1, which prohibits withholding more than 5 percent of tickets destined to be available for sale to the general public.

94.   Violation of this statute is a *per se* violation of the CFA and Defendants are strictly liable to the Plaintiffs and the class for such violations.

95.   Plaintiffs and the class members suffered ascertainable losses consisting of the difference between the price they paid for tickets on the secondary market and either the face value of the ticket or the price of tickets on the secondary market had Defendants made the statutorily required amount of the tickets available to the general public and not violated the Statute, and accordingly were harmed by Defendants' conduct in violation of the CFA.

WHEREFORE, Plaintiffs demand judgment against the Defendants, on their behalf and that of similarly situated class members as follows:

a. Awarding all relief available pursuant to the CFA, including but not limited to treble damages, interests, costs of suit and attorney's fees; and

b. Granting such other relief as this Court deems just and
   proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand trial by jury as to all issues in
the above matter.

<div style="margin-left: 40%;">

**NAGEL RICE LLP**
*Attorneys for Plaintiffs and
Putative Class*

_____*s/ Bruce H. Nagel*_____
Bruce H. Nagel, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

</div>

Dated:  April 29, 2019